FILED

11/13/2019

Clerk of the
Appellate Courts

IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
May 22, 2019 Session

## STATE OF TENNESSEE v. DENTON JONES

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Knox County**
**No. 105473    G. Scott Green, Judge**

_____

### No. E2017-00535-SC-R11-CD

_____

The State charged the Defendant, Denton Jones, with five separate misdemeanor thefts aggregated into a single felony count pursuant to Tennessee Code Annotated section 39-14-105(b)(1) (2014) which provides that "[i]n a prosecution for theft of property, . . . the state may charge multiple criminal acts committed against one (1) or more victims as a single count if the criminal acts arise from a common scheme, purpose, intent or enterprise." The Defendant proceeded to trial, and the jury convicted him as charged. The jury aggregated the values of the separate misdemeanor thefts as totaling more than $1,000 but less than $10,000. Accordingly, the Defendant was convicted of a Class D felony.[1] The Defendant appealed, and the Court of Criminal Appeals affirmed the trial court's judgment. We granted the Defendant's application for permission to appeal in order to determine whether the separate misdemeanor thefts were properly aggregated into a single felony charge and whether the evidence sufficiently established that the separate thefts arose from a common scheme, purpose, intent, or enterprise. Answering both of these questions in the affirmative, we affirm the Defendant's conviction.

### Tenn. R. App. P. 11 Appeal by Permission;
### Judgment of the Court of Criminal Appeals Affirmed

JEFFREY S. BIVINS, C.J., delivered the opinion of the Court, in which CORNELIA A. CLARK, SHARON G. LEE, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.

Robert L. Jolley, Jr., and Emma M. Steel (at trial and on appeal), Knoxville, Tennessee, and Jonathan Harwell and Sarah Parker (at pretrial motions), Knoxville, Tennessee, for the appellant, Denton Jones.

_____

[1] See Tenn. Code Ann. § 39-14-105(a)(3).

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; Nicholas W. Spangler, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and Takisha Fitzgerald, Assistant District Attorney General, for the appellant, the State of Tennessee.

## OPINION

### Factual and Procedural Background

The State indicted the Defendant on two alternative counts of theft. The first count provides as follows:

> The Grand Jurors for the State of Tennessee, upon their oaths, present that DENTON JONES, ALIAS, heretofore, to-wit: On or about the 28th day of April, 2014, and on divers and diverse days between that date and the 12th day of May, 2014, in the State and County aforesaid, did unlawfully and knowingly obtain property, to-wit: Electronic Fitness Monitors, of the value of at least One Thousand and 00/100 ($1,000.00) Dollars but less than Ten Thousand and 00/100 ($10,000.00) Dollars, of Target without their effective consent, with intent to deprive the said Target thereof, in violation of T.C.A. 39-14-103, and against the peace and dignity of the State of Tennessee.

The second, alternative, count alleged that the Defendant committed the same thefts by "unlawfully and knowingly exercis[ing] control over" the property. See Tenn. Code Ann. § 39-14-103(a) (2014) (providing that a person commits theft of property by either knowingly obtaining or knowingly exercising control over another's property without the owner's consent and with the intent to deprive the owner of the property).

The affidavits of complaint filed in general sessions court in support of these charges alleged that the first theft occurred at approximately 9:25 a.m. on April 28, 2014, at the Target store located on Parkside Drive in Knoxville ("the Parkside Drive Target"). The second theft allegedly occurred at approximately 12:10 p.m. on April 30, 2014, also at the Parkside Drive Target. The third theft allegedly occurred at approximately 12:31 p.m. on April 30, 2014, at the Target store located on Town Center Boulevard in Knoxville ("the Town Center Target"). The fourth theft allegedly occurred at approximately 2:30 p.m. on May 10, 2014, at the Parkside Drive Target. The fifth theft allegedly occurred at approximately 10:01 a.m. on May 12, 2014, at the Town Center Target. All of the alleged thefts were of fitness tracking devices.

Prior to trial, the defense filed a motion to dismiss the indictment on the basis that it "improperly aggregates [all five] separate thefts in a single count." Relying on a 1998 decision by this Court, the defense contended that the aggregation of separate thefts was

2

proper in only two scenarios.  In the first scenario, the separate thefts are "(1) from the same owner[s]; (2) from the same location; *and* (3) pursuant to a continuing criminal impulse or a single sustained larcenous scheme."  State v. Byrd, 968 S.W.2d 290, 291 (Tenn. 1998) (citing Nelson v. State, 344 S.W.2d 540 (Tenn. 1960)).  In the second scenario, "the value of stolen property may be aggregated . . . when a defendant exercises simultaneous possession or control over stolen property belonging to different owners." Id. at 292.  Pursuant to this precedent, the defense asserted, the Defendant's five alleged thefts could be aggregated into two counts consistently with the first scenario:  three thefts from the Parkside Drive Target and two thefts from the Town Center Target.  The defense argued that even less aggregation could be established under the second scenario because the State was alleging that the Defendant sold the items he stole shortly after he obtained them.  Accordingly, only the two thefts occurring on a single day, April 30, could be aggregated consistently with the second scenario.  After a hearing, the trial court denied the motion on the basis that the grand jury had properly returned an indictment and that the Defendant was raising, in essence, a challenge to the sufficiency of the evidence.

The trial court also suggested to the defense that it had "the right to move *in limine* if there are necessary predicates that have to be shown prior to the aggregation."  The defense thereafter filed a motion

> *in limine* and pursuant to Rule 104 and State v. Byrd, 968 S.W.2d 290 (Tenn. 1998), to preclude the State from introducing evidence of two alleged thefts at the Target on Town Center Boulevard at trial.  Under governing law, evidence of such thefts could be introduced only if it were properly aggregable with the other three thefts from a separate location, which would require a showing that the proceeds of all the thefts were possessed simultaneously.  Otherwise, such thefts are irrelevant but prejudicial prior bad acts.

(This text carried a footnote stating that the Defendant "assumes the State will proceed on the three Parkside Drive thefts.  The same logic, however, applies were the State to proceed instead on the two Town Center Boulevard thefts.  In that case, evidence of the Parkside Drive thefts would not be admissible.")  Relying on Byrd, the Defendant argued in this motion that, unless he had simultaneous possession of all the fitness trackers, "then the State can introduce only evidence of the thefts from a single location, and the other thefts are simply not relevant to the charged offenses.  Simultaneous possession is therefore a necessary predicate fact for admissibility."

The State filed a response, and the trial court held a hearing.  No proof was presented at the hearing on the Defendant's motion in limine; however, defense counsel acknowledged to the court during the hearing that the "sum total of the evidence" would indicate that the thefts involved property of an "identical nature" taken from an "identical

owner," "but on multiple occasions and from two different locations." The State acknowledged that it could not show that the Defendant had possessed all of the stolen items at the same time.

The trial court denied the motion, stating as follows:

> I believe the State can properly—under the plain wording of the [aggregation] statute, if the State can show a common scheme or plan, and in this instance, at least at this juncture, the allegation is that [the Defendant] acquired fitness—very similar fitness equipment for the purpose of—by way of theft—this device for fraud [sic] from the identical merchant, albeit in two different locations, but both—all these thefts stem from Target Stores in Knox County, it's the same type of property, if the State can show a common scheme or plan,[2] I believe these are properly aggregated into one count.

(Footnote added).

The Defendant then proceeded to a jury trial at which the following evidence was adduced.

Fredrick Joe Smith testified that he was employed by Target as an "executive team leader over assets protection" for loss prevention purposes. He worked at the Parkside Drive Target in Knox County. Mr. Smith described the methods that Target used to protect its merchandise from being stolen, including video cameras that filmed areas both inside the store and the parking lot, "spider wrap" placed around merchandise that would cause an alarm to sound "if it goes out of the building," and "locking peg hooks" to hold the spider-wrapped merchandise. The spider wrap and locking peg hooks were used on "[h]igh dollar, high theft items," including fitness tracking devices. Mr. Smith explained that, if a person worked at it hard enough, an item could be removed from spider wrap, leaving the empty spider wrap hanging from the hook and avoiding the alarm. Mr. Smith also utilized special inventory lists to assist in tracking the high dollar, high theft items.

---

[2] The trial judge's references to "common scheme or plan" indicate that he may have been confusing the statutory aggregation provision with the language relevant to a motion to sever offenses under Tennessee Rule of Criminal Procedure 14(b)(1) which provides that,

> [i]f two or more offenses are joined or consolidated for trial pursuant to Rule 8(b) [which governs permissive joinder of offenses], the defendant has the right to a severance of the offenses unless the offenses are part of a common scheme or plan and the evidence of one would be admissible in the trial of the others.

Mr. Smith stated that, in 2014, his store carried both Fitbit and Jawbone fitness tracking devices. These items were located in the sporting goods department. Mr. Smith explained that there was a video camera trained on the sporting goods department because it was a "high theft area." The fitness tracking devices were wrapped with the spider wrap and also attached to a locking peg hook. He explained that, if a person were able to remove the spider wrap and leave the wrap hanging from the hook, a theft could take place. The video camera was aimed at the sporting goods department to assist in identifying anyone removing the spider wrap.

The State introduced video recordings taken by video cameras located in Mr. Smith's store on April 28, 2014; April 30, 2014; and May 10, 2014. The April 28 video depicts a bearded Caucasian male entering the sporting goods area of the store at approximately 9:20 a.m. He is wearing a dark ball cap bearing the Under Armor logo, a light blue hooded sweatshirt, and khaki shorts. He stands and crouches in front of a display of hanging items, handling one of the items. After prolonged handling, he removes an item from the display and places it nearby on a shelf. He repeats these actions, returns to the shelf where he placed the first item, and leaves the area with both items at approximately 9:24 a.m. A man appearing to be the same person exits the store at approximately 9:25 a.m. When he exits the store, he is not carrying a bag.

Mr. Smith testified that, when he checked the sporting goods area on this day, he found empty spider wrap hanging on the locking peg hooks. After checking his records, he determined that, on April 28, 2014, two Fitbit fitness trackers had been removed from the area and had not been purchased. He further stated that the value of the two missing items was $199.98.

The April 30 video depicts a bearded Caucasian male wearing clothing identical to that in the April 28 video. He enters the sporting goods area at approximately 12:04 p.m. He stands and crouches in front of the same display of hanging items as in the April 28 video and repeats the same actions of handling and then removing items from the display. He places the first item on a shelf a short distance away, obtains a second item from the display and places it with the first, and then removes a third item from the display. He gathers all three items and places them in his pockets. He leaves the area at approximately 12:09 p.m. A man appearing to be the same person exits the store at approximately 12:10 p.m. When he exits the store, he is not carrying a bag.

Mr. Smith determined that, on April 30, 2014, two Fitbit fitness trackers and one Jawbone fitness tracker had been taken from the store without having been paid for. Two of these items were valued at $99.99 each and the third item was valued at $129.99.

The May 10 video depicts a bearded Caucasian male wearing a dark ball cap bearing the same logo as in the previous videos, a dark short-sleeved shirt, and khaki shorts. He enters the sporting goods area at approximately 2:20 p.m. He goes to the

same display of hanging items as in the April videos and handles the items. He removes two items from the display, one at a time, placing each on a nearby shelf. There are numerous customers in the vicinity and the man intermittently walks around other portions of the area. Eventually he returns to the two items he placed on the shelf, moves them a short distance away on the shelf, and appears to be engaging in further manipulation. He again walks away from the shelf. The video ends at 2:30 p.m. with the suspect still in the sporting goods area near the shelf where he placed the two items.

Mr. Smith determined that, on May 10, 2014, two Jawbone fitness trackers had been taken from the store without having been paid for. These two items were valued at $129.99 each.

On cross-examination, Mr. Smith stated that Target had not recovered any of these missing items. He also explained that, at the time of the thefts, Target did not track the serial numbers of these items while they were in the store. The serial number would be recorded in a transaction report only if the item was purchased.

Jim Elliott testified that, in 2014, he was the asset protection team leader for the Town Center Target in Knox County. When he came to work on April 30, 2014, he discovered that there were two Jawbone fitness trackers missing from their locking peg hooks. He reviewed the video taken of the sporting goods area that morning, and the video depicted an individual taking the Jawbones. Mr. Elliott stated that the total value of the two missing Jawbones was $259.98.

The video of the April 30, 2014, incident was admitted into evidence and played for the jury. The recording shows the sporting goods area of the store. At 12:28 p.m., a bearded Caucasian man enters the frame. He is wearing a dark ball cap bearing the same logo as in the Parkside Target videos, a dark jacket, and khaki shorts or pants.[3] The man crouches in front of a display of hanging items, handles an item, and then takes it from the display area and places it on a shelf a short distance away. The man returns to the display of hanging items, crouches, handles another item, and removes it from the display. The man takes the second item, returns to the shelf where he placed the first item, and retrieves the first item. Holding both items, the man walks out of the frame. At 12:31 p.m., a man who appears to be the same person is recorded leaving the store. He is not carrying a bag.

Mr. Elliott also testified that, when he came into work on May 12, 2014, he discovered that one Jawbone fitness tracker was missing. The spider wrap in which it had been encased was hanging empty from the peg hook. He reviewed the video, and the

---

[3] The location of display shelves and the angle of the video camera do not permit the viewer to determine whether the person is wearing pants or shorts.

video depicted an individual taking the Jawbone. Mr. Elliott stated that the value of the missing Jawbone was $129.99.

The video of the May 12 incident was admitted into evidence and played for the jury. The recording depicts the sporting goods area. At approximately 9:58 a.m., a bearded Caucasian man wearing a dark ball cap bearing the same logo as in the other videos, a grey t-shirt, and khaki shorts or pants enters the frame. The man crouches down in front of the same display of hanging items as depicted in the April 30 video and begins handling an item. He takes an item from the display and walks out of the frame at approximately 9:59 a.m. At 10:01 a.m., a man who appears to be the same person is recorded leaving the store. He is not carrying a bag.

Mike Adams testified that he is the owner of Red Rhino, "a buy, sale, trade secondhand store." He stated that, before the store purchased any items from a seller, the seller would have to produce a driver's license or state-issued identification. The store would keep a copy of the identification and the seller would have to sign a form. The store employee would make sure that the seller matched the photograph on the identification and that the seller's signature matched the signature on the identification. Any item purchased from the seller was then entered into the LEIDS database. Mr. Adams described this database as "for the police department to make sure if the item is stolen or something like that, they have time to see what the item is and compare it." The store would also hold the item for "20 plus days" before offering it for sale.

Mr. Adams explained that he had gathered records pertaining to purchases the store had made from the Defendant in April and May of 2014. These records (and cross-examination) established that, during the period April 30, 2014, through May 30, 2014, the Defendant sold four Fitbits and fourteen Jawbones to Red Rhino: two Fitbits on April 30; two Fitbits on May 3; three Jawbones on May 7th or 8th; four Jawbones on May 10; four Jawbones on May 12; and three Jawbones on May 23. Mr. Adams stated that, based on the price that Red Rhino paid to the Defendant for these items, they "would be new or new in box items." According to Mr. Adams, all of these items that Red Rhino purchased from the Defendant had "long been sold." Red Rhino did not keep the serial numbers of the items. The items, however, were entered into the LEIDS database.

Tom Epps of the Knoxville Police Department testified that, in June 2014, he investigated a series of thefts from Target. During the course of his investigation, he reviewed the videos recorded on April 28, 2014; April 30, 2014; May 10, 2014; and May 12, 2014. He subsequently looked up the Defendant in the LEIDS online database. Officer Epps identified the Defendant at trial.

Based on this proof, the jury convicted the Defendant on both counts of the indictment. The trial court subsequently merged the conviction on Count 2 into the conviction on Count 1, a Class D felony. See Tenn. Code Ann. § 39-14-105(a)(3) (2014).

After a hearing, the trial court sentenced the Defendant as a career offender to six years of incarceration.[4]

The Defendant appealed, and the Court of Criminal Appeals affirmed the trial court's judgment. State v. Jones, No. E2017-00535-CCA-R3-CD, 2018 WL 3199553, at *10 (Tenn. Crim. App. June 28, 2018), perm. app. granted (Tenn. Oct. 10, 2018). We granted the Defendant's application for permission to appeal in order to address the following two issues:

> 1. Whether, under Tennessee Code Annotated section 39-14-105(b) (2018) and State v. Byrd, 968 S.W.2d 290 (Tenn. 1998), the State properly charged the defendant with theft of property valued at $1,000 or more but less than $10,000 based on the aggregate value of the property stolen on five [sic] separate days in 2014 from two different locations.

> 2. Whether the evidence sufficiently established that the separate instances of theft arose "from a common scheme, purpose, intent[,] or enterprise" as required by section 39-14-105(b)(1).

## Analysis

### *Propriety of the Indictment*

The first issue before us is the propriety of the State's aggregation of the five separate thefts into a single count. This issue involves the construction and application of the theft aggregation provision, a portion of the grading of theft statute, Tennessee Code Annotated section 39-14-105. Statutory construction presents a question of law, which we review do novo with no presumption of correctness accorded the rulings below. State v. Henderson, 531 S.W.3d 687, 692 (Tenn. 2017) (citing State v. Springer, 406 S.W.3d 526, 532-33 (Tenn. 2013)).

We begin by reiterating our role in construing statutes:

> The overriding purpose of a court in construing a statute is to ascertain and effectuate the legislative intent, without either expanding or contracting the statute's intended scope. Legislative intent is first and foremost reflected in the language of the statute. We presume that the

---

[4] The trial court stated that it was sentencing the Defendant "to 6 years under the new statutes which now makes this a Class E felony." See Tenn. Code Ann. § 39-14-105(a)(2) (2018) ("Theft of property . . . is . . . [a] Class E felony if the value of the property . . . obtained is more than one thousand dollars ($1,000) but less than two thousand five hundred dollars ($2,500)."). The total value of the stolen fitness trackers was $1,179.90. The State has not raised any issue in this appeal regarding the trial court's classification of the offense as a Class E felony.

8

Legislature intended each word in a statute to have a specific purpose and meaning. The words used in a statute are to be given their natural and ordinary meaning, and, because words are known by the company they keep, we construe them in the context in which they appear and in light of the general purpose of the statute. We endeavor to construe statutes in a reasonable manner which avoids statutory conflict and provides for harmonious operation of the laws.

Wallace v. Metro. Gov't of Nashville, 546 S.W.3d 47, 52-53 (Tenn. 2018) (quotation marks and citations omitted).

The Defendant contends that the theft aggregation provision must be construed as incorporating the limitations on aggregation set forth by this Court in Byrd. Specifically, he argues that separate thefts may be aggregated only when the thefts are "(1) from the same owner[s][,] (2) from the same location[,] and (3) pursuant to a continuing criminal impulse or a single sustained larcenous scheme," Byrd, 968 S.W.2d at 291 (emphasis omitted), or when the defendant "simultaneously exercises possession or control over stolen property belonging to different owners," id. at 290. Respectfully, we disagree.

A brief review will be helpful. Theft is defined as follows: "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a). Thus, theft can be committed via two alternative methods. The statute defining the offense of theft contains no element regarding the value of the property stolen.

The value of the property stolen, however, must be determined in order to establish the grade of the theft offense. See Tenn. Code Ann. § 39-14-105(a). Moreover, the value of the stolen property should be averred in the indictment. See State v. Overton, 245 S.W.2d 188, 189 (Tenn. 1951) (recognizing that an indictment must include the value of the relevant property when the value establishes the degree of the crime or affects punishment). The ultimate determination of the stolen property's value is a jury question, Tenn. Code Ann. § 39-11-115 (2014), and our pattern jury instructions provide that the jury is to determine value only after having first found the defendant guilty of theft, see T.P.I.—Crim. 11.03(a).

In 2012, the statute providing for the grading of theft offenses was amended to add the following:

(1) In a prosecution for theft of property, . . . the state may charge multiple criminal acts committed against one (1) or more victims as a single count if the criminal acts arise from a common scheme, purpose, intent or enterprise.

9

(2) The monetary value of property from multiple criminal acts which are charged in a single count of theft of property shall be aggregated to establish value under this section.

Tenn. Code Ann. § 39-14-105(b).[5]  The point of aggregating multiple individual thefts into a single count is to charge the defendant with a single felony offense as opposed to multiple misdemeanor thefts, or to raise lower grade multiple felony thefts to a single higher grade felony charge.

The aggregation of multiple theft offenses into a single count is an exception to the general rule prohibiting "duplicity," or the charging of more than one offense in a single count.  Duplicitous indictments are improper.  See State v. Lindsey, 208 S.W.3d 432, 438 (Tenn. Crim. App. 2006) ("Generally, it is impermissible to charge two distinct offenses in a single count of an indictment."); see also Tenn. R. Crim. P. 8 (providing that, whether offenses are joined in a single indictment by requirement or by permission, each offense is to be stated in a separate count).  Challenges to duplicitous indictments must be raised before trial.  Lindsey, 208 S.W.3d at 439; see also Tenn. R. Crim. P. 12(b)(2)(B) (providing that a claim that the indictment "fails to show jurisdiction in the court or to charge an offense" may be raised "at any time while the case is pending" but that any other claim of defect in the indictment must be raised prior to trial).

The Defendant's position that the statutory aggregation provision must be construed to incorporate the limitations on aggregation recognized in Byrd relies on two arguments:  (1) statements made during the General Assembly's consideration of the provision and (2) prior Court of Criminal Appeals decisions.  We reject both of these contentions.

The Defendant quotes at length in his brief from discussions in the legislature surrounding the aggregation provision before its passage.  He relies on comments from various legislators and Mr. Wally Kirby of the District Attorney's Conference that the primary goal of the provision was to allow the aggregation of thefts perpetuated via Ponzi schemes.  Even taking these quoted passages at face value, however, they do not serve to contradict or undermine the plain language of the statute itself:

In a prosecution for theft of property, theft of services, and *any* offense for which the punishment is determined pursuant to this section, the state may charge multiple criminal acts committed against one (1) or more victims as a single count if the criminal acts arise from a common scheme, purpose, intent or enterprise.

---

[5] This provision became effective on July 1, 2012.  See 2012 Tenn. Pub. Acts, ch. 1080 § 2.

Tenn. Code Ann. § 39-14-105(b)(1) (emphasis added). By its very terms, the statutory provision applies to *any* theft of property or services because section 39-14-105 sets forth the offense classifications of any and all thefts of property or services.

Moreover, under our criminal code, the classification of an offense is one of the determining factors of punishment. See Tenn. Code Ann. § 40-35-110(a), (c) (2014) (stating that felonies and misdemeanors "are classified for the purpose of sentencing"). As pointed out by the State, if the General Assembly had meant to limit the application of the aggregation provision to Ponzi schemes, it would have provided for that limitation in the text of the statute. Given that the General Assembly incorporated no such limitation, we are not at liberty to impose it.

We likewise are unpersuaded by the prior Court of Criminal Appeals decisions relied upon by the Defendant. See State v. McCullough, No. W2016-01942-CCA-R3-CD, 2018 WL 1721870, at *2-3 (Tenn. Crim. App. Apr. 9, 2018) (analyzing thefts committed prior to the statutory aggregation provision taking effect); State v. Keese, No. E2016-02020-CCA-R3-CD, 2018 WL 1353697, at *2 n.2 (Tenn. Crim. App. Mar. 15, 2018) (defendant accused of committing two separate, but aggregated, thefts in 2014; without explaining why, the court referred to aggregation under Byrd but not to the statutory aggregation provision), perm. appeal granted (Tenn. Aug. 9, 2018); State v. Sexton, No. E2016-01296-CCA-R3-CD, 2017 WL 3535329, at *9 (Tenn. Crim. App. Aug. 17, 2017) (analyzing thefts committed prior to the statutory aggregation provision taking effect; without explaining why, the court referred to the statutory aggregation provision); State v. Graham, No. W2015-02410-CCA-R3-CD, 2017 WL 2800208, at *5 (Tenn. Crim. App. June 28, 2017) (analyzing thefts committed prior to the statutory aggregation provision taking effect); State v. Sanders, No. M2014-02535-CCA-R3-CD, 2015 WL 5461660, at *5 (Tenn. Crim. App. Sept. 18, 2015) (concluding that aggregation of 2013 thefts was proper under the statutory aggregation provision; without explaining why, the court also cited an unreported Court of Criminal Appeals decision reciting the common law standards for aggregation); State v. Combs, No. E2014-01175-CCA-R3-CD, 2015 WL 2400793, at *9 (Tenn. Crim. App. May 20, 2015) (analyzing thefts committed prior to the statutory aggregation provision taking effect); State v. Ryan, No. W2014-00327-CCA-R3-CD, 2015 WL 279301, at *5 (Tenn. Crim. App. Jan. 22, 2015) (defendant accused of committing separate, but aggregated, thefts in September and October 2012; without explaining why, the court referred to aggregation under Byrd but did not refer to the statutory aggregation provision); State v. Taylor, No. W2013-02520-CCA-R3-CD, 2014 WL 6977731, at *4 n.2 (Tenn. Crim. App. Dec. 10, 2014) (defendant accused of taking two items from owner's possession at the same time and from the same place in October 2012; without explaining why, the court referred to aggregation under Byrd but did not refer to the statutory aggregation provision); State v. Arradi, No. M2013-00613-CCA-R3-CD, 2014 WL 891536, at *7 n.2 (Tenn. Crim. App. Mar. 7, 2014) (while analyzing thefts committed prior to the statutory aggregation provision, noting with no analysis that the statutory aggregation provision codified the common law

11

aggregation principles). While we agree with the Defendant that all of these decisions were issued after the statutory aggregation provision took effect, and that all of them refer to Byrd or its holding, none of these cases holds that the statutory aggregation provision is limited by Byrd. To the extent that any of these cases might be misconstrued to stand for that proposition, they are overruled.

In this case, the Court of Criminal Appeals correctly held that the statutory aggregation provision does not incorporate the limitations expressed in Byrd. Specifically, the court noted that the aggregation provision "permits aggregation when the State can establish that 'the criminal acts arise from a common scheme, purpose, intent or enterprise,' see T[enn.] C[ode] A[nn.] § 39-14-105(b)(1), but does not require that the takings occurred 'from the same location.'" Jones, 2018 WL 3199553, at *4. The Court of Criminal Appeals also correctly recognized that, "[w]hen there is a conflict between the common law and a statute, the provision[s] of the statute must prevail." Id. (quoting Graves v. Ill. Cent. R. R. Co., 148 S.W. 239, 242 (1912)); see also State v. Perrier, 536 S.W.3d 388, 396-97 (Tenn. 2017) (recognizing that, to the extent required by the statute itself, a legislative enactment displaces the common law (citing Wlodarz v. State, 361 S.W.3d 490, 496 (Tenn. 2012)).

As with Ponzi schemes, if the General Assembly had intended to incorporate the limitations to aggregation recognized in Byrd, the statute would have tracked that language. It does not. Instead, the statute imposes specific limitations that are different and distinct from Byrd. Our legislature has determined that separate thefts may be aggregated when they all "arise from a common scheme, purpose, intent or enterprise." The identity and location of the owner(s) of the property is not relevant. Simultaneous possession of the property by the suspect is not required. Rather, if the evidence establishes that the separate thefts meet any of the criteria actually and expressly set forth in the statute, then the State may aggregate the thefts into a single charge.

In sum, we hold that the statutory aggregation provision is not limited in its application to the two aggregation scenarios described in Byrd.

We also hold that the trial court had sufficient information before it prior to trial to conclude that the prosecution had acted within its considerable discretion in deciding to aggregate the five separate thefts into a single count. "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense . . . , the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely within his discretion." State v. Harris, 33 S.W.3d 767, 771 (Tenn. 2000) (quoting Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978)). Thus, so long as the trial court had sufficient information before it to establish that the prosecution had probable cause to conclude that the Defendant's five separate thefts arose "from a common scheme, purpose, intent or enterprise," the trial court did not err in denying the Defendant's pretrial challenges to the propriety of the aggregated charge.

12

The statutory aggregation provision does not define the terms "common scheme, purpose, intent or enterprise." As we often do when faced with undefined statutory terms, we look to Black's Law Dictionary for a possible answer. See, e.g., State v. Edmondson, 231 S.W.3d 925, 928 (Tenn. 2007) ("When the Legislature does not provide a specific definition for a statutory term, this Court may look to other sources, including Black's Law Dictionary, for guidance."); see also, e.g., State v. Fitz, 19 S.W.3d 213, 216 (Tenn. 2000) (relying on Black's Law Dictionary for guidance in construing the word "violence" as used in the robbery statutes).

Black's Law Dictionary defines "scheme" as "1. A systemic plan; . . . 2. An artful plot or plan, usu[ally] to deceive others." Black's Law Dictionary (11th ed. 2019), Westlaw. "Purpose" is defined as "[a]n objective, goal, or end." Id. "Intent" is defined as "[t]he state of mind accompanying an act, esp[ecially] a forbidden act." Id. Finally, "enterprise" is defined as "[a]n organization or venture, esp[ecially] for business purposes." Id. Additionally, our criminal code defines "intentional" as follows: "'Intentional' means that a person acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result." Tenn. Code Ann. § 39-11-106(a)(18) (2014). We also note that, for the purposes of Tennessee Rule of Criminal Procedure 14(b)(1), the term "common scheme" includes three categories of evidence: (1) that which indicates that the defendant's repeated criminal conduct was so distinctive as to constitute a signature crime; (2) that which indicates that the defendant's offenses were "part of a larger, continuing plan or conspiracy"; and (3) that which indicates that the offenses were "all part of the same criminal transaction." State v. Moore, 6 S.W.3d 235, 240 (Tenn. 1999).

Prior to trial, the trial court had before it the allegations contained in the State's response to the Defendant's motion for a bill of particulars, including copies of the affidavits of complaint filed in general sessions court, together with both parties' acknowledgments about what the proof at trial would and would not show. This information indicated that the Defendant had engaged in similar thefts of similar items from two Target stores followed by sales of the stolen articles, all occurring on just a few days within a short period of time. These allegations were, in our view, sufficient to establish that the Defendant had engaged in conduct that constituted a "systemic plan" and/or an "artful plot or plan" to deceive others and that he engaged in this conduct with an "objective, goal, or end" in mind on each occasion, to wit, to obtain money through the sale of particular stolen objects.

Accordingly, we hold that the allegations before the trial court and counsels' acknowledgements during pretrial argument established a sufficient basis for the trial court to determine that the prosecutor had probable cause to conclude that the Defendant's five alleged thefts arose from "a common scheme, purpose, intent or

enterprise." Therefore, the aggregation of the five alleged thefts into one count was not improper. The Defendant is entitled to no relief on this basis.

### *Sufficiency of the Evidence*

The second issue before us requires us to determine whether there was sufficient evidence before the jury for it to conclude that the separate instances of theft arose "from a common scheme, purpose, intent or enterprise" as required by the statutory aggregation provision.

Our standard of review regarding sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e). After a jury finds a defendant guilty, the presumption of innocence is removed and replaced with a presumption of guilt. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Consequently, the defendant has the burden on appeal of demonstrating why the evidence was insufficient to support the jury's verdict. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The appellate court does not weigh the evidence anew; rather, "a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts" in the testimony and all reasonably drawn inferences in favor of the State. State v. Harris, 839 S.W.2d 54, 75 (Tenn.1992). Thus, "the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom." Id. (citation omitted). This standard of review applies to guilty verdicts based upon direct or circumstantial evidence. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (citing State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). In Dorantes, this Court adopted the United States Supreme Court standard that "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." Id. at 381. Accordingly, the evidence need not exclude every other reasonable hypothesis except that of the defendant's guilt, provided the defendant's guilt is established beyond a reasonable doubt. Id.

As indicated above, the aggregation provision is a portion of the statute setting forth the grades of misdemeanor and felony theft offenses based upon the value of the property stolen. See Tenn. Code Ann. § 39-14-105. For instance, at the time the instant offenses were committed, a jury's determination that the value of the stolen property was $500 or less resulted in the theft being graded as a Class A misdemeanor. Id. § 39-14-105(a)(1) (2014). A jury determination that the value of the stolen property was $10,000 or more but less than $60,000 resulted in the theft being graded as a Class C felony. Id. §

14

39-14-105(a)(4).[6]   As indicated above, the purpose of determining the value of the property stolen, and the corresponding grade of the offense, is to enable the trial court to properly sentence the defendant.  See Tenn. Code Ann. § 40-35-110(a), (c) (stating that felonies and misdemeanors "are classified for the purpose of sentencing").

Because the aggregation provision is contained within the statute establishing the grades of theft offenses and not within the statute defining the offense of theft, the aggregation criteria are not elements of the offense of theft, just as valuation is not an element of the offense of theft.  Compare Tenn. Code Ann. § 39-14-103(a) (setting forth the elements of the offense of theft of property) with Tenn. Code Ann. § 39-14-105(a) (setting forth the grades of theft offenses based on the value of the property stolen). Accordingly, a jury's determinations regarding aggregation and valuation occur only if, and after, the jury first determines that an offense of theft has been committed.

If, as in this case, the defendant has been charged with an aggregated theft offense, then the jury will have three distinct determinations to make.  First, the jury will have to determine whether the State proved that any of the individual aggregated theft offenses were committed.  If the jury determines that the State has proved that the defendant committed at least two of the individual aggregated theft offenses, then the jury will have to determine if the proven offenses arose "from a common scheme, purpose, intent or enterprise."  If the jury determines that at least two of the proven thefts arose "from a common scheme, purpose, intent or enterprise," then the jury must determine the value of the property stolen in each of the thefts meeting the aggregation criteria.  The jury should then add those values together.  See Tenn. Code Ann. § 39-14-105(b)(2) ("The monetary value of property from multiple criminal acts which are charged in a single count of theft of property shall be aggregated to establish value under this section.").  Based on the jury's designated combined value of the aggregated thefts, the trial court will be able to grade the offense accordingly.

We are constrained to note, however, that the jury in this case received no instruction requiring it to determine whether the aggregated thefts arose "from a common scheme, purpose, intent or enterprise."  Rather, the jury was charged only that, if it found the Defendant guilty of either Count One or Count Two beyond a reasonable doubt,

you must go further and fix the range of value of the property.

Value is:

(1) The fair market value of the property at the time and place of the offense; or

_____

[6] The grading of theft statute was amended in 2016 to increase the values establishing each grade. See Tenn. Code Ann. § 39-14-105(a) (2018); 2016 Tenn. Pub. Acts, ch. 906 § 5.

15

(2) If the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense.

The State has the burden of proving this value beyond a reasonable doubt as defined in these instructions.

The jury will fix the value of the property or services obtained along with its verdict by indicating which of the following ranges the value falls within:

(1) Five hundred dollars ($500) or less;

(2) More than five hundred dollars ($500), but less than one thousand dollars ($1,000);

(3) More than one thousand dollars ($1,000), but less than ten thousand ($10,000.00).

The monetary value of property from multiple criminal acts which are charged in a single count of theft of property may be aggregated to establish value.

We reiterate that

[t]he general principle in criminal cases is that there is a duty upon the trial judge to give a complete charge of the law applicable to the facts of the case and the defendant has a right to have every issue of fact raised by the evidence and material to his defense submitted to the jury upon proper instructions by the judge.

State v. Hatcher, 310 S.W.3d 788, 815 (Tenn. 2010) (quoting State v. Thompson, 519 S.W.2d 789, 792 (Tenn. 1975)). However, the defense in this case neither requested a jury instruction regarding the "common scheme, purpose, intent or enterprise" language of the aggregation provision nor objected to the trial court's failure to charge the jury on this element of the grading statute. Indeed, the defense does not raise this issue on appeal. "Where a trial court gives an allegedly incomplete jury charge to which the defense does not object, we consider the issue waived and will review the omitted instruction for plain error only." Id. at 815 n.15 (citing State v. Bledsoe, 226 S.W.3d 349, 353 (Tenn. 2007)).

16

For an appellate court to grant relief on the basis of plain error,

> (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice."

State v. Smith, 24 S.W.3d 274, 282-83 (Tenn. 2000) (quoting and adopting the test established by State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). A defendant must establish all five factors before this Court will grant plain error relief, and we may cease our review upon concluding that any of the five factors is not established. Id. at 283.

We hold that the Defendant is not entitled to plain error relief on the basis of the incomplete jury charge in this case because consideration of the error is not necessary to do substantial justice. Rather, we are convinced beyond a reasonable doubt that, had the jury been properly charged on the aggregation criteria, it would have concluded that the Defendant's five separate thefts[7] arose "from a common scheme, purpose, intent or enterprise."

The following factors were common to each of the five thefts: (1) they all involved the same victim, Target; (2) they all took place during the late morning or early afternoon hours; (3) they were all of two types of fitness trackers; (4) the manner of each theft was strikingly similar; (5) the Defendant wore an identical ball cap during each theft, presumably to partially obscure his face and avoid detection; and (6) items identical to those stolen were subsequently sold to the same purchaser within days of the thefts. See also Jones, 2018 WL 3199553, at *4 ("On five separate occasions, the defendant entered two different Target stores and stole fitness trackers. On each occasion, the defendant worked the fitness trackers free of theft deterrent devices before placing them behind other merchandise on a nearby shelf. He then walked around until the coast was clear before returning to retrieve the merchandise. Then he concealed the purloined merchandise and left the store. The defendant wore nearly identical clothing during each of the offenses. After taking the fitness trackers from Target without paying for them, he sold them to Red Rhino.") Additionally, all of the thefts were committed within a fifteen-day period. This proof was sufficient for the finder of fact to have concluded that all five of the thefts arose from a common scheme, purpose, intent, or enterprise.

---

[7] The jury in this case determined that the value of the property stolen by the Defendant was $1,000 or more but less than $10,000. Based on the proof, this valuation indicates that the jury aggregated the values of at least four of the Defendant's thefts. Because we are not reviewing the jury's determination that the Defendant was guilty of the underlying theft offenses, we assume for the sake of argument that the jury concluded that the Defendant committed all five of the individual thefts included within each alternative count.

17

During the course of our research for this case, we have discovered that our pattern jury instructions do not contain an instruction for a jury's determination of whether a defendant's aggregated theft offenses arose "from a common scheme, purpose, intent or enterprise." We urge the Committee on Pattern Jury Instructions (Criminal) of the Tennessee Judicial Conference to create and adopt such an instruction. In the meantime, we suggest that, when a defendant is being tried for aggregated theft offenses, a trial court charge the jury as follows:

If you find the defendant guilty of [insert relevant count(s)] beyond a reasonable doubt, you must go further and fix the range of value of the property.

Value is:

(1) The fair market value of the property at the time and place of the offense; or

(2) If the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense.

The State has the burden of proving this value beyond a reasonable doubt as defined in these instructions.

The jury will fix the value of the property or services obtained along with its verdict by indicating which of the following ranges the value falls within:

(1) Five hundred dollars ($500) or less;

(2) More than five hundred dollars ($500), but less than one thousand dollars ($1,000);

(3) More than one thousand dollars ($1,000), but less than ten thousand ($10,000.00).[8]

The monetary value of property from multiple criminal acts which are charged in a single count of theft of property shall be aggregated to establish value *if you find, beyond a reasonable doubt, that the multiple criminal acts arose from a common scheme, a common purpose, a common*

---

[8] These value ranges should be adjusted to reflect any applicable changes in the law. See, e.g., Tenn. Code Ann. § 39-14-105(a) (Supp. 2016).

*intent, or a common enterprise. You may aggregate only the values of the property obtained pursuant to those criminal acts that arose from a common scheme, a common purpose, a common intent, or a common enterprise.*

*A common scheme involves multiple criminal acts committed pursuant to a systematic plan or plot or that are part of a larger, continuing plan or conspiracy.*

*A common purpose involves multiple criminal acts committed pursuant to the same objective, goal, or end.*

*A common intent involves multiple criminal acts committed with the same state of mind. That state of mind is a conscious objective or desire to engage in the multiple criminal acts proven.*

*A common enterprise involves multiple criminal acts committed pursuant to a single venture.*

We emphasize that the criteria required by the statutory aggregation provision for combining multiple thefts into a single count relate only to the valuation of theft crimes. When a defendant is charged with multiple theft crimes aggregated into a single count, it is not necessary for the jury to find that the thefts arose from a common scheme, purpose, intent, or enterprise in order to find the defendant guilty of the charged crime. Rather, the jury must determine whether the individual thefts arose from a common scheme, purpose, intent, or enterprise only in order to establish the value of the stolen property, which then will allow the trial court to establish the grade of the offense. This determination takes place only if, and after, the jury concludes that the defendant committed at least two of the theft offenses alleged in the aggregated count.

In sum, in future cases brought pursuant to the statutory aggregation provision, the trial court should charge the jury to first determine which, if any, of the individual theft offenses were proved beyond a reasonable doubt.[9] If the jury determines that the State has proven at least two of the aggregated theft offenses, the jury must then determine whether the proven offenses arose from a common scheme, purpose, intent, or enterprise. If so, the jury should aggregate the value of the theft offenses meeting the criteria. The

---

[9] Thus, when charging the jury on the elements of theft when individual thefts have been aggregated into a single count, the judge should instruct the jury to evaluate *each* theft included in the charge. The jury may convict the defendant of theft if it finds that the State proved the elements of the offense beyond a reasonable doubt as to at least one of the individual aggregated thefts. The *grade* of the theft offense will be determined by the trial court on the basis of how many of the individual thefts the jury determines the defendant committed and, if the jury determines that at least two thefts were committed, whether they were each committed pursuant to the statutory criteria.

jury should be instructed to aggregate the value of only those offenses meeting the aggregation criteria. If the State aggregates five offenses into a single count, for instance, and the jury concludes that the State proved that all five offenses were committed, but that only three of the offenses arose from a common scheme, purpose, intent, or enterprise, the defendant may be convicted of a single theft offense graded on the basis of the combined value of the three properly aggregated offenses.

## Conclusion

We hold that the State acted within the bounds of its prosecutorial discretion in choosing to aggregate the Defendant's five separate theft offenses into a single count pursuant to the statutory aggregation provision. We also hold that the Defendant is not entitled to plain error relief on the basis that the trial court failed to charge the jury that it could aggregate the values of the theft offenses only upon its determination that each theft arose from a common scheme, purpose, intent, or enterprise. Accordingly, we affirm the judgment of conviction.

_____
JEFFREY S. BIVINS, CHIEF JUSTICE